IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RUTH VITAL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 4:18-CV-2506 |
| | § | |
| NANCY BERRYHILL, | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Ruth Vital ("Plaintiff") filed this suit seeking review of the denial of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"), as well as review of the denial of supplemental security income under Title XVI of the Act. ECF No. 1.[1] The Parties filed cross-motions for summary judgment. ECF Nos. 11, 14. Based on the briefing and the record, the Court grants Plaintiff's motion and denies Defendant Nancy Berryhill's ("Commissioner") motion.

### I. BACKGROUND

Plaintiff is a 61-year-old woman. R. 63. Plaintiff has held various jobs as an office clerk and phone clerk since 1985. R. 309-13. She currently works two hours

---

[1] On July 9, 2019, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). ECF No. 9.

1

per week for Purple Heart as a telemarketer, earning about $30 to $40 every two weeks. R. 58. She works from home and she makes calls soliciting donations for pick up. She has a script that is one line stating that a truck would be in the area and asking whether the person called would have anything for donation and pick up. R. 73. Plaintiff had worked longer hours for Purple Heart in the past, but she had to reduce her hours because of eye problems. R. 58-59, 381. Plaintiff has an IQ score of 66, which falls in the range of borderline intellectual functioning. R. 22, 464-65. Plaintiff was held back in 1st grade and placed in special education classes from 7th to 10th grades. R. 24, 64-69, 424. She was held back in the 10th grade twice and eventually dropped out at age 19. R. 67-68. Plaintiff received her GED in 1980, after failing the exam twice. R. 67-68, 424. She has lived with her mother her entire life. R. 57. She also lived with her aunt, until she was nine years old. Her aunt is a music teacher in a catholic school and provided an affidavit in support of Plaintiff's claim. She opined that Plaintiff could not live on her own. R. 57. Without providing any factual basis, Plaintiff testified that she disagreed. R. 64.

On November 12, 2014, Plaintiff filed an application under Title II seeking benefits beginning on April 16, 2013 based on an eye condition, thyroid condition, and difficulty in comprehension. R. 213-214, 297, 314.[2] On April 1, 2015, the

---

[2] The relevant time period is April 16, 2013—Plaintiff's alleged onset date—through December 31, 2017—Plaintiff's last insured date. R. 18. The Court will consider medical evidence that pre-

Commissioner denied her claim. R. 112. Plaintiff requested reconsideration on April 20, 2015, R. 116, and the Commissioner again denied her claim, R. 119.[3] On June 4, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 124. ALJ Gerald L. Meyer conducted a hearing on September 26, 2016. R. 55-80. Rosalind Lloyd, a vocational expert ("VE"), testified at the hearing. R. 58-60, 78-79. Plaintiff also testified. R. 57-58, 63-78. On November 15, 2016, the ALJ denied Plaintiff's application for benefits. R. 18-28.[4]

On December 12, 2016, Plaintiff requested the Appeals Council to review the ALJ's decision. R. 209. On October 20, 2017, the Appeals Council denied Plaintiff's

---

dates this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App.'x 350, 354 (5th Cir. 2014).

[3] Plaintiff also applied for Supplemental Security Income ("SSI") under Title XVI on April 20, 2015. R. 215-224. The denial of reconsideration dated June 2, 2015 addresses Plaintiff's application for both Title II and XVI benefits. *See* R. 119.

[4] The ALJ determined Plaintiff is not disabled at Step Four. At Step One, the ALJ found that Plaintiff's limited work at Purple Heart does not constitute substantial gainful activity and that Plaintiff has not otherwise engaged in substantial gainful activity between April 16, 2013 and the date of his decision. R. 20. At Step Two, the ALJ found Plaintiff has the following medically determinable and severe impairments: cataract, blindness in the right eye, thyroid issues, osteoarthritis, obesity, borderline intellectual functioning, and depression. R. 20. At Step Three, the ALJ found Plaintiff's impairments or combination of impairments do not rise to the level of severity of impairments in the listings associated with blindness (Listings 2.02, 2.03, and 2.04), major dysfunction of a joint (Listing 1.02), obesity (SSR 02-1p), or mental impairment (Listings 12.04, 12.05, 12.06). R. 21-23. The ALJ found Plaintiff has the Residual Functioning Capacity ("RFC") to perform light work, including the ability to lift or carry 10 pounds frequently and 20 pounds occasionally; stand, walk, and sit for 6 hours per day with normal breaks; occasionally kneel; and understand, remember, and carry out detailed but not complex instructions. R. 23-27. However, Plaintiff must never climb ladders, ropes, or scaffolds; crawl; be exposed to unprotected heights; or operate dangerous machinery. R. 23. At Step Four, the ALJ found Plaintiff capable of performing her past relevant work as a file clerk and telemarketer, and therefore she is not disabled under the Social Security Act. R. 27-28.

request for review. R. 1-5; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision). On July 13, 2018, Plaintiff filed this civil action. ECF No. 1.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive[.]

*Id*. Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "more than a scintilla but less than a preponderance." *Id*.

A reviewing court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192

F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986). Rather, a reviewing court must scrutinize the record as a whole, considering whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id*. A court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

### III. ANALYSIS OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DECISION

Plaintiff's sole argument is that the ALJ erred in finding her impairments did not meet or equal the requirements of Listing 12.05C for intellectual disability, because the ALJ should not have considered her GED or semi-skilled work experience in reaching this conclusion. ECF No. 11 at 6. Commissioner argues the ALJ's decision is supported by substantial evidence because Plaintiff did not prove that she had significant deficits in adaptive functioning before the age of 22, as required by Listing 12.05C. ECF No. 14 at 1. The Court finds the ALJ erred in evaluating Listing 12.05C.

## A. The Listing 12.05C Requirements.

Listing 12.05C provides as follows:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C.[5]

"To meet the requirements of this listing, the claimant must satisfy the diagnostic elements of the introductory paragraph as well as the specific factors of paragraph C." *Bailey v. Astrue*, No. 10-CV-1187, 2011 WL 4048394, at *3 (N.D. Tex. Sept. 12, 2011) (citing *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009)). To satisfy Listing 12.05C, therefore, a claimant must prove: "(1) [(a)] significant subaverage intellectual functioning [(b)] with deficits in adaptive functioning [and (c)] which initially manifested before age 22; and (2) a valid I.Q. score of 60 to 70;

---

[5] Listing 12.05 was amended as of March 14, 2018. Both parties agree that the listing in effect as of November 15, 2016, the date of the ALJ's decision, applies. ECF No. 11 at 6 n.1; ECF No. 14 at 6 n.3.

and (3) a physical or other mental impairment posing additional and significant work-related limitation of function." *Pritchett v. Comm'r of Soc. Sec. Admin.*, No. 11-CV-309, 2012 WL 1058123, at *7 (N.D. Tex. Mar. 29, 2012).[6]

### B. The ALJ Erred In Finding Plaintiff Did Not Meet The Listing.

Here, the ALJ recognized Plaintiff's IQ score of 66,[7] but found she did not satisfy the other criteria of Listing 12.05C:

> [T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function. While the claimant obtained a Full Scale IQ score of 66, which indicates she is functioning in the borderline range, the claimant has obtained her GED and had worked semi-skilled jobs at the level of substantial gainful activity.

R. 23 (emphasis added). Given that the ALJ accepted Plaintiff's IQ score of 66, the ALJ's reasoning can only be read as rejecting the third element required by Listing 12.05C—an additional impairment posing significant work limitation—because

---

[6] A claimant that meets these listing requirements is per se disabled at Step Three of the disability evaluation process. 20 C.F.R. § 416.920(a)(4)(iii); Frank v. Barnhart, 455 F. Supp. 2d 554, 562 (E.D. Tex. 2006) (citing Barajas v. Heckler, 738 F.2d 641, 644 (5th Cir. 1984)). However, "[l]istings criteria are demanding and stringent. The burden of proof rests with a claimant . . . [and] [w]hen a claimant fails to sustain that burden, courts must conclude that substantial evidence supports the ALJ's finding that Listings-level impairments are not present." Frank, 455 F. Supp. 2d at 562 (citation omitted).

[7] Plaintiff spends a significant portion of her brief discussing her special education history and arguing her IQ should be presumed to remain constant her whole life—in other words arguing that her mental impairment existed before the age of 22. *See* ECF No. 11 at 7-8. Several courts have found such a presumption exists. *See, e.g.*, *Morgan v. Colvin*, No. 15-CV-2784, 2016 WL 6605143, at *9 (S.D. Tex. Oct. 3, 2016).

7

Plaintiff earned her GED and has held previous jobs.

### 1. Plaintiff's Step 2 severe impairments satisfy Listing 12.05C's third requirement.

"All that is required [for the 'additional impairment' prong of Listing 12.05C] is proof of a 'severe' impairment as defined at Step 2 of the sequential evaluation analysis, *i.e.* an impairment or combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities." *Bailey*, 2011 WL 4048394, at *4; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A (explaining the additional impairment requirement in Listing 12.05C is defined as a "severe" impairment under 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Because the ALJ found Plaintiff had a number of severe impairments at Step 2 of the evaluation process—namely, cataract, blindness in the right eye, thyroid issues, osteoarthritis, obesity, and depression—the ALJ erred in finding Plaintiff failed to meet the third element of Listing 12.05C. *See, e.g.*, *Thompson v. Colvin*, No. 13-CV-2616, 2013 WL 5450282, at *3 (N.D. Tex. Sept. 30, 2013) (finding ALJ erred by failing to find plaintiff's severe impairments from Step Two satisfied the "additional impairment" element of Listing 12.05C); *Cargill v. Colvin*, No. 12-CV-183, 2013 WL 5526620, at *5-7 (N.D. Tex. Sept. 30, 2013) (same).[8]

---

8 Commissioner argues the ALJ's finding is not an error because "[a] history of earning a GED and performing semi-skilled work can undermine a Listing 12.05 argument." ECF No. 14 at 7. However, neither of the cases Commissioner cites for this proposition hold that the third element of Listing 12.05C can be undermined by education or work history. *See Sheeks v. Comm'r of Soc. Sec. Admin.*, 544 F. App'x 639, 642 (6th Cir. 2013) (discussing GED in relation to manifestation

## 2. The ALJ's error is reversible.

"The ALJ's errors in assessing Listing 12.05(C) are reversible only if prejudicial." *Brown v. Colvin*, No. 14-CV-201, 2015 WL 5655954, at *6 (S.D. Miss. Sept. 24, 2015); *see, e.g.*, *Thompson*, 2013 WL 5450282, at *3 (applying harmless error analysis after the ALJ erred in finding plaintiff had no additional and significant work-related limitation under Listing 12.05C). In other words, reversal or "[r]emand is necessary only if the claimant's substantial rights have been affected." *Fields v. Berryhill*, No. 17-CV-78, 2018 WL 3104236, at *6 (N.D. Tex. June 7, 2018), *report and recommendation adopted*, 2018 WL 3092958 (June 22, 2018). "To be entitled to relief, the [plaintiff] must establish . . . that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision." *Id.*

The uncontroverted evidence here establishes that Plaintiff meets the threshold requirements of Listing 12.05C's introductory paragraph—that she has deficits in adaptive functioning which manifested before age 22. "Adaptive functioning" consists of "a person's 'effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his

---

of subaverage intellectual functioning before 22, part of the threshold requirements of Listing 12.05C); *Brumfield v. Colvin*, No. 14-CV-622, 2015 WL 2389758, at *5 (E.D. La. May 12, 2015) (discussing plaintiff's past semi-skilled work in relation to deficits in adaptive functioning, also part of the threshold requirement for Listing 12.05C).

or her cultural group.'" *McCaskill v. Dep't of Health & Human Servs.*, 640 F. App'x 331, 334 (5th Cir. 2016) (quoting *Heller v. Doe*, 509 U.S. 312, 329 (1993)). "To evaluate deficits in adaptive functions, courts look at a claimant's ability to live on his own, as well as dress himself and prepare simple meals. Work history is [also] considered when evaluating adaptive functioning." *Potts v. Astrue*, No. 12-CV-229, 2013 WL 5785659, at *8 (S.D. Tex. Feb. 19, 2013) (citations omitted), *report and recommendation adopted*, 2013 WL 12106129 (Mar. 28, 2013).[9]

Based on a consultative exam by Dr. Cecilia Lonnecker ("Dr. Lonnecker") performed in July of 2016, the ALJ found Plaintiff had no restriction in activities of daily living, no difficulties in social functioning, and only moderate difficulties in concentration. R. 21-22; *see* R. 461-70.[10] Acknowledging that the Plaintiff "lived with her mother and aunt her whole life, has never married, and has no children," the ALJ found, based on her conclusory testimony, that Plaintiff could live independently. R. 22. The ALJ repeatedly found that Plaintiff obtained her GED and

---

[9] "Adaptive activities include cleaning, shopping, cooking, maintaining a residence, taking public transportation, and caring appropriately for grooming and hygiene." *McCaskill*, 640 F. App'x at 334 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C).

[10] These findings were in the context of a Listing 12.05D analysis, rather than an analysis of the introductory paragraph of Listing 12.05. *See* R. 21-22. Because the Listing 12.05D criteria are often used to evaluate adaptive functioning, the ALJ's failure to explicitly address the introductory paragraph of Listing 12.05 is not a reversible error when substantial evidence supports the ALJ's decision. *See Roberson v. Comm'r of Soc. Sec. Admin.*, No. 17-CV-1322, 2019 WL 1437604, at *10 (M.D. La. Mar. 29, 2019). Here, however, the Court concludes that the ALJ's decision is not supported by substantial evidence.

worked. R. 22, 23, 24 (twice), 27. The Court finds that there is not substantial evidence in the record to support his conclusions.

The uncontroverted evidence in the case is that the Plaintiff has never lived on her own. She has always lived with her mother. R. 63. There is no credible evidence in the record that the Plaintiff could live on her own. Her aunt stated in her affidavit that the Plaintiff could not live alone. R. 57; 423-25. Plaintiff testified that she disagreed with her aunt. In one line of testimony in response to the ALJ's request for an explanation, the Plaintiff testified "I just disagree with it." R. 64. Given that she has never lived alone in her 61 years, is mentally impaired, partially blind, and her aunt (a school teacher) who knows her well testified that she could not live on her own, Plaintiff's conclusory testimony is not credible. Thus, the Court finds no substantial evidence to support a finding that Plaintiff could live on her own.

With regard to the other evidence of adaptive functioning, Plaintiff told the consultative examiner that she could prepare snacks. R. 462, 465. She also told the consultative examiner that she performs some chores and maintains her personal hygiene, both when she feels like it. *Id.* Again, this is not sufficient to conclude that she can live independently. She also drives—although not at night due to her eyesight—but she testified that her doctor told her not to drive. R. 64, 316. Thus, she drives a limited amount, but it is against the advice of her doctor.

The ALJ's reliance on Plaintiff's GED and work history is also misplaced. He

ignored that it took Plaintiff three tries before she passed her GED examination. R. 68. Plaintiff has held primarily one job for Purple Heart during the 15 years preceding the hearing. R. 57-60, 73, 381.[11] She testified that she worked for Purple Heart in her current job and the prior position. R. 57-58. She works from home and calls potential donors seeking donations for a truck that will be in their neighborhood in the upcoming days. She has a one-line script that she has memorized. R. 57-60, 73. She testified that she had to reduce her hours in 2013 because of her blindness. R. 58. At the time of the hearing she worked no more than two hours a day and made approximately $30-40 every two weeks. *Id.* Plaintiff's work soliciting donations for a Purple Heart truck pick up over the last 15 years does not compare to other cases where the courts found that past work showed no deficits in adaptive functioning. *See, e.g.*, *McCaskill*, 640 F. App'x at 334-35 (no deficits in adaptive functioning when plaintiff had a 15-year career as a longshoreman); *Thompson v. Colvin*, No. 12-CV-466, 2013 WL 4035229, at *5 (N.D. Tex. Aug. 8, 2013) (no deficits in adaptive functioning when plaintiff had successfully held various jobs); *Potts*, 2013 WL 5785659, at *8 (no deficits in adaptive functioning when plaintiff maintained a job as a cook for 10 years); *Means v. Astrue*, No. 07-CV-1278, 2008 WL 2714187,

---

[11] R. 309 (Form 3369-BK listing Plaintiff's work history); R. 399 (Form 3373-BK indicating Plaintiff worked 8-12 hours per day for 37 years until she began to have eye problems); R. 58, 60 (categorizing Plaintiff's work as a file clerk and telemarketer as semi-skilled). Dr. Lonnecker opined Plaintiff may experience work-related difficulties because she has "assumed the disabled role." R. 466.

12

at *12-14 (S.D. Tex. July 10, 2008) (no deficits in adaptive functioning when plaintiff held several jobs). "Given the circumstances of this prior employment, Plaintiff's work history is not probative of [her] adaptive functioning abilities." *Watkins v. Colvin,* No. 3-13-cv-2472, 2014 WL 4744635, at *4 (N.D. Tex. Sept. 23, 2014) (citing *Bailey v. Astrue,* No. 3-10-CV-1187, 2011 WL 4048394, at *4 (N.D. Tex. Sept. 12, 2011) ("plaintiff's work history not indicative of adaptive functioning where . . . position required minimal skills") and *Durden v. Astrue,* 586 F. Supp. 2d 828, 836 (S.D. Tex. 2008) ("individual's history of performing unskilled work does not necessarily refute finding that she had deficits in adaptive functioning.")).

Thus, Plaintiff sufficiently established that she meets the Listing in 12.05C. The ALJ found that Plaintiff has a significant subaverage intellectual functioning based on her I.Q. score between 60 to 70. The uncontroverted evidence supports the presumption that this condition manifested itself before she was 22 years old. In addition, Plaintiff sufficiently established she has deficits in adaptive functioning because she has never lived on her own and cannot sufficiently care for herself independently. The ALJ's reliance on her GED obtained after three tries and work history primarily making calls for Purple Heart donations from her home is not probative of her adaptive functioning abilities. Finally, the ALJ's finding of severe impairments at Step 2 satisfies the requirement of physical or other mental impairments posing additional and significant work-related limitation of function.

Accordingly, Plaintiff meets Listing 12.05C and is presumptively disabled.

IV. **CONCLUSION**

Therefore, the Court GRANTS Plaintiff's motion for summary judgment, ECF No. 11, DENIES Commissioner's motion for summary judgment, ECF No. 14, REVERSES the ALJ's decision denying benefits, and DIRECTS an award of disability benefits to the Plaintiff. *See Reed v. Comm'r,* No. 3:18-cv-0822, 2009 WL 1574473, at *6 (N.D. Tex. June 4, 2009) ("The court can reverse and direct that benefits be paid . . . where additional fact finding by the ALJ is unnecessary to determine that a claimant is disable under the Social Security Act.").

Signed at Houston, Texas, on March 2, 2020.

_____
Dena Hanovice Palermo
United States Magistrate Judge